IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MOHAMMED ARAIINEJAD | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:04-CV-168-WKW - |
| | ) | SRW (WO) |
| O'CHARLEY'S, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, Defendant O'Charley's, Inc. (hereinafter "O'Charley's") filed a Motion to Stay the Proceedings and Compel Arbitration, seeking arbitration of this Title VII action.  Plaintiff Mohammed Araiinejad (hereinafter "Araiinejad) opposes the motion.  For the reasons set forth herein, the Court finds the petition to compel arbitration is due to be GRANTED.

## I.   PROCEDURAL HISTORY

On February 25, 2004, Araiinejad filed a Complaint in this Court pursuant to 28 U.S.C. § 1331.  Araiinejad claims anti-ethnic discrimination arising under Title VII of the Civil Rights Act of 1964.  In his prayer for relief, Araiinejad requests an injunction against further discrimination, lost pay and benefits, compensatory damages,  and invalidation of an arbitration agreement entered into with O'Charley's.  In response to Araiinejad's Complaint,

1

O'Charley's filed a Motion to Stay the Proceedings and Compel Arbitration.

Araiinejad opposes O'Charley's Motion to Stay the Proceedings and Compel Arbitration on several grounds. First, Araiinejad avers that he signed the arbitration agreement under duress, in fear of losing his job. Second, Araiinejad asserts that O'Charley's misrepresented the availability of mediation and the judicial system, thereby fraudulently inducing him to sign the agreement. Last, Araiinejad contends that the arbitration agreement is unconscionable based on the terms of the agreement, lack of knowledge, unequal bargaining power and public policy.

## II.   FACTS

Araiinejad received a bachelor's degree in mathematics in 1981 from Auburn University and a master's degree from the University of Alabama in econometrics and mathematics in 1983. At one point, Araiinejad was a college professor. On December 13, 1993, Araiinejad began a career at O'Charley's as a management trainee in Huntsville, Alabama. O'Charley's is a full-service restaurant chain, headquartered in Nashville, Tennessee, with restaurants located throughout the southeastern and midwestern states. Araiinejad was promoted to area supervisor of four O'Charley's restaurants in northern Alabama. Sometime in 2000, O'Charley's implemented an alternative dispute resolution program. In furtherance thereof, O'Charley's held a meeting at its home office in Nashville to explain the program to area supervisors, such as Araiinejad. Araiinejad attended the

meeting.

At the July, 2000 meeting Araiinejad was shown a video explaining the alternative dispute resolution program which involves voluntary mediation and mandatory arbitration. O'Charley's submitted the video and transcript as exhibits.   The video explained the mediation and arbitration processes.  At the video presentation, an arbitration agreement was passed out to the viewers.  Araiinejad received a copy of the arbitration agreement, which he took home to Huntsville.  Two weeks later Araiinejad signed the arbitration agreement.

In bold letters and centered at the top of the first page, the agreement signed by Araiinejad read "ARBITRATION AGREEMENT - ALABAMA." The agreement provided, in relevant part, that

> 1.  Employee and O'Charley's mutually agree that any and all claims or disputes described in paragraph 2 that Employee may have now or in the future with or against O'Charley's . . . may be heard by a neutral mediator  .  .  .  and that if voluntary mediation of a dispute by Employee or O'Charley's is unsuccessful, or if the Employee or O'Charley's do not wish to use the voluntary mediation procedure, the claim or dispute shall be submitted to arbitration . . . .

> 2.  The disputes covered by this Agreement include all claims or controversies, whether or not arising out of employment or termination of employment, that would constitute a cause of action in a court, including but not limited to claims . . . for violation of any federal, state, local, or other governmental statute, regulation, or ordinance (including but not limited to claims, if any, based on . . . Title VII of the Civil Rights Act of 1964) . . . .

> 3.   The arbitrator's decision shall be final and binding on Employee and O'Charley's.   Employee and O'Charley's

acknowledge that arbitration is a substitute for traditional litigation and hereby waive their respective rights to file a private lawsuit and have that suit heard in court by a judge and jury.

4.  Employee's waiver of his/her right to trial by jury and his/her agreement to submit all disputes, including without limitation those arising out of employment or termination of employment, to final and binding arbitration is done voluntarily and knowingly.  Employee fully understands that this Agreement precludes Employee from seeking redress in court for a dispute with or against O'Charley's

. . . .

I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, THAT I UNDERSTAND ITS TERMS, THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN O'CHARLEY'S AND ME RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT, AND THAT I HAVE ENTERED INTO THE AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY O'CHARLEY'S OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF.

Ex. 2 to *Complaint*.  As an area supervisor, Araiinejad also instructed his employees to watch

the video.  Ex. A to *Joint Evidentiary Submission Concerning O'Charley's, Inc.'s Motion

to Compel Arbitration*, Araiinejad Dep. 27.

Araiinejad was an area supervisor for O'Charley's until his termination on December

16, 2002.  Due to an allegation of anti-ethnic discrimination, Araiinejad and his counsel

contacted O'Charley's regarding mediation.  However, discussions broke down when

O'Charley's expressed an intention not to offer Araiinejad money at mediation.  Thereafter,

4

Araiinejad filed a Complaint with this Court.

### III.   JURISDICTION AND VENUE

The Court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.  Plaintiff's cause of action is anti-ethnic discrimination, which originates in Title VII of the Civil Rights Act of 1964.  The parties do not dispute jurisdiction or venue, and the Court finds an adequate evidentiary basis for subject matter jurisdiction and venue.

### IV.   STANDARD OF REVIEW

In 1925, Congress enacted the Federal Arbitration Act ("FAA") to offset the "hostility of American courts to the enforcement of arbitration agreements."  *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 111 (2001).  The FAA explicitly permits the use of arbitration and specifically authorizes individuals to contract for arbitration.  *See* 9 U.S.C. §§ 1-10 (1991).  Pursuant to the FAA, a written arbitration "provision in any . . . contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2 (1991). The effect of Section 2 is "to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24 (1983).  Section 3 provides for the stay of proceedings in federal district courts when an issue in the proceedings is referable to arbitration.  *See* 9 U.S.C. § 3 (1991).  Section 4 provides for orders compelling arbitration when one party failed, neglected, or refused to comply with an arbitration agreement.  *See*

5

9 U.S.C. § 4 (1991); *Boyd v. Town of Hayneville, Ala.,* 144 F. Supp. 2d 1272, 1275 (M.D. Ala. 2001).

It is beyond dispute that the FAA establishes "'a federal policy favoring arbitration.'" *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24). Therefore, courts must rigorously enforce agreements to arbitrate. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985). Indeed, under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. Despite this presumption favoring arbitration, and as noted above, the FAA prohibits the enforcement of an arbitration clause that is invalid "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Thus, while federal policy favors arbitration, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582 (1960). Accordingly, "[t]he question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83 (2002) (quoting *AT & T Tech., Inc. v. Communications Workers,* 475 U.S. 643, 649 (1986)). Issues to be decided by the court "include certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly

binding arbitration clause applies to a certain type of controversy." *Green Tree Fin. Corp. v. Bazzle,* 539 U.S. 444, 452 (2003). As a general rule, when considering these "gateway issues," a court "may consider only issues relating to the making and performance of the agreement to arbitrate," and not issues relating to the making of the contract generally. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 (1967); *John B. Goodman Ltd. P'ship v. The Constr. Co.,* 321 F.3d 1094, 1095-96 (11th Cir.2003). "*Prima Paint's* mandate is that challenges to the validity of the contract as a whole must be presented to the arbitrator." *Rollins, Inc. v. Foster,* 991 F. Supp. 1426, 1431 (M.D. Ala. 1998). There is an exception to the *Prima Paint* rule, however, for "cases where not merely the enforceability, but the initial formation or existence of a contract, including a disputed arbitration clause, is legitimately called into question, and must be decided by the court." *Rainbow Inv., Inc. v. Super 8 Motels, Inc.,* 973 F. Supp. 1387, 1390 (M.D. Ala. 1997) (Thompson, J.).

In resolving these "gateway issues," the Court applies ordinary state common law governing the formation of contracts. *See, e.g., Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Univ.,* 489 U.S. 468, 475-76 (1989); *see also Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 63 n.9 (1995).

## V.   DISCUSSION

The Court will consider Araiinejad's objections to the arbitration agreement and whether those objections are timely.  Ordinarily there are three issues to be addressed in making these determinations: 1) whether a valid contract exists; if so, 2) whether the arbitration agreement applies to the dispute in question; and 3) whether the contract involved interstate commerce.  If the Court negatively concludes any of the above issues, O'Charley's Motion to Stay and Compel Arbitration should be denied.  If all three issues are answered in the affirmative, consideration must be given to the ripeness of plaintiff's general objections to the arbitration process.

Araiinejad makes no issue of whether the arbitration agreement is applicable or whether the contract involved interstate commerce.  Accordingly, the substantive focus is whether a valid contract exists, under the proper burdens of proof.

Upon filing a motion to stay and compel arbitration, the moving party has the burden of proving the existence of an arbitration contract and proving that the contract evidences a transaction affecting commerce. *TransSouth Fin. Corp. et al. v. Bell*, 739 So.2d 1110, 1114 (Ala. 1999).  Once the movant makes a *prima facie* showing that it is entitled under the FAA to arbitration, the burden shifts to the  nonmovant to support his allegations with an *evidentiary showing of some kind*; otherwise the [movant's] motion to compel arbitration is due to be granted.  *Id.* (emphasis added); *see also Lawrence v. Household Bank, N.A., 343 F. Supp. 2d 1101, 1111* (M.D. Ala. 2004).

*Prima facie* evidence of a valid arbitration agreement is established by the video and

signed arbitration agreement.  Thus, the burden shifts to Araiinejad to make an "evidentiary showing of some kind" that there was not a valid contract.  *Id.*  In an attempt to do this, Araiinejad argues that he signed the arbitration agreement under duress, O'Charley's misrepresented material facts, and the agreement is unconscionable and against public policy.

These arguments go to the making of the arbitration agreement and are properly determined by this Court, rather than an arbitrator.[1]  However, as discussed *infra*, Araiinejad fails to provide evidence to support his claims that the arbitration agreement is invalid.

    1.   <u>Duress</u>

Araiinejad claims that the arbitration agreement is unenforceable because he signed it under duress, in fear of losing his job.  Ex 2. to *Complaint*; see also *Plaintiff's Brief and Argument in Opposition to Defendant's Motion to Compel Arbitration*, at 2, 5.  However, this Court is not of the same opinion.  The Supreme Court of Alabama has held that

> '[t]he entering into a contract with reluctance or even dissatisfaction with its terms because of economic necessity does not, of itself, constitute economic duress invalidating the contract.  Unless unlawful or unconscionable pressure is applied by the other party to induce the entering into a contract, there is not economic compulsion amounting to duress.'

---

[1] The Supreme Court of the United States and the Eleventh Circuit make clear that a court "may consider only issues relating to the making and performance of the agreement to arbitrate," and not issues relating to the making of the contract generally. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 (1967); *John B. Goodman Ltd. P'ship v. The Constr. Co.,* 321 F.3d 1094, 1095-96 (11th Cir.2003).  In the present case, the agreement to arbitrate is the entire contract.

*Ponder v. Lincoln Nat'l Sales Corp.*, 612 So.2d 1169, 1171 (Ala. 1992), citing *Clark v. Liberty Nat'l. Life Ins. Co.*, 592 So.2d 564, 567 (Ala. 1992).  Importantly, requiring an arbitration agreement as a condition of employment is not illegal.  *See Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307 (holding that plaintiff had no reasonable belief that requiring employees to arbitrate Title VII claims as a condition of continued employment was unlawful).   Indeed, many Alabama cases hold that arbitration agreements signed as a condition of employment are valid.  *See Ex Parte Beasley*, 712 So.2d 338 (Ala.1998) (the arbitration policy required all employees to agree to arbitration as a condition of employment and the court ruled that if plaintiff had signed agreement it would have been valid); *see also Baptist Health Sys. v. Mack*, 860 So.2d 1265 (Ala. 2003) (relying heavily upon reasoning in *Beasley* and determining the signed arbitration agreement, required as a condition of employment, was valid).

Araiinejad demonstrates no unlawful or unconscionable behavior on the part of O'Charley's.  Therefore, construing Alabama law, when Araiinejad signed the arbitration agreement, and even assuming he was motivated by fear of losing his job, he was not legally under duress.

2.   <u>Misrepresentation of Material Facts (Fraud)</u>

Araiinejad claims that the arbitration agreement with O'Charley's promised a meaningful mediation.  However, no such promise is found in the agreement signed by Araiinejad, the video or any other evidence presented by Araiinejad.  Instead, the arbitration

agreement plainly states the following:

> Employee and O'Charley's mutually agree that any and all claims . . . *may* be heard by a neutral mediator . . . and that if voluntary mediation of a dispute by Employee or O'Charley's is unsuccessful, *or if the Employee or O'Charley's do not wish to use the voluntary mediation procedure*, the claim or dispute shall be submitted to arbitration . . . .

Ex. 2 to *Complaint* (emphasis added).  Applying the plain meaning of the word "or", neither party was obligated to mediate.  In fact, the agreement explicitly states that mandatory arbitration is the only binding dispute resolution mechanism available to the parties.  Without any evidence contradicting the video and the signed arbitration agreement, Araiinejad fails to meet his burden and this Court finds that O'Charley's did not misrepresent material facts regarding mediation.

Araiinejad also claims that O'Charley's, through Frank Standley of its Human Resources Department, told him that when pursuing an EEOC charge, Araiinejad could still litigate his dispute in the judicial system.  This is the second factual basis of his fraudulent inducement claim.

In order to prove fraudulent inducement, Araiinejad must show reasonable reliance on a misrepresentation of material fact.  *Kelly v. UHC Mgmt. Co., Inc*., 967 F.Supp. 1240, 1255 (N.D. Ala. 1997).  In the present case, as in *Kelly*, "assuming that defendants made the statements in question and that they were false (and they appear to be), plaintiff's reliance on the statements at issue was not reasonable."  *Id*. at 1255, 1256. Araiinejad's reliance was

not reasonable as a matter of law because the arbitration agreement he signed made it clear that arbitration was ultimately the exclusive method by which he could resolve employment discrimination claims. *Id.*; *see also Foremost Ins. Co. v. Parham*, 693 So.2d 409 (Ala. 1997) (replacing the "justifiable reliance" standard with the "reasonable reliance" standard). The agreement explicitly states that

> [e]mployee's waiver of his/her right to trial by jury and his/her agreement to submit all disputes, including without limitation those arising out of employment or termination of employment, to final and binding arbitration is done voluntarily and knowingly. Employee fully understands that this Agreement precludes Employee from seeking redress in court for a dispute with or against O'Charley's.

Ex. 2 to *Complaint*, Para 4. Arainejad was fully capable of reading and understanding the agreement. He has a bachelor's degree and a master's degree, and has worked as a college professor. Ex. A to *Joint Evidentiary Submission Concerning O'Charley's, Inc.'s Motion to Compel Arbitration*, Araiinejad Dep. 10-11. Araiinejad's assertions of reliance may be true, but they are not reasonable under the circumstances. It necessarily follows that Araiinejad was not fraudulently induced by Frank Standley to sign the contract.

Araiinejad knowingly and intelligently entered into the arbitration agreement, which involved voluntary mediation and mandatory binding arbitration.[2]

3. Unconscionable and Against Public Policy

_____

[2]This finding is bolstered by the fact that Araiinejad had the agreement in his possession for two weeks prior to executing it. Ex. A to *Joint Evidentiary Submission Concerning O'Charley's, Inc.'s Motion to Compel Arbitration*, Araiinejad Dep. 23-25, 64.

Lastly, Araiinejad argues that the arbitration process is inherently unfair and against public policy.  In supporting this claim Araiinejad contends that arbitration requires excessive fees that are not required in federal court and O'Charley's "has a relationship of being a repeat 'customer' with AAA", pays high initiation fees, and, as such is likely to receive preferential treatment.

Under the arbitration agreement, Araiinejad is required to pay only a $100 filing fee, an amount less than the $150[3] filing fee necessary to file a complaint in federal court. Ex. 2(C)(3)(b)(i)(3) of *Defendant's Motion to Stay Proceedings and Compel Arbitration*. In fact, pursuant to the arbitration agreement, "[t]he remainder of the administrative fees charged by the AAA and the hourly rates charged by the Arbitrator will be paid by O'Charley's, unless Employee objects, in which case such fees and hourly rates will be bourne equally by the parties, unless they agree otherwise."  *Id*.  AAA is a not-for-profit organization and O'Charley's does not pay an initiation fee to AAA.  *Id*. at (A)(1). Furthermore, as discussed in the "Standard of Review" *supra*, public policy favors the enforcement of an arbitration agreement.

Although the bases for vacating are narrow, if an arbitrator is guilty of abuse of power or otherwise corrupt behavior, the ruling of the arbitrator can be vacated.  *See* 9 U.S.C.S. § 10(a) (listing four statutory grounds for vacating an arbitration decision); *see also Montes v. Shearson Lehman Bros*., 128 F.3d 1456 (11th Cir. 1997) (providing three additional grounds

---

[3]Effective February 7, 2005, the filing fee increased from $150 to $250.

for vacatur).  Araiinejad has recourse under the statute and *Montes* if his anticipated ill-treatment occurs.  His objections to arbitration are thus premature.

### VI.   CONCLUSION

For the foregoing reasons, the Court finds that the Motion to Stay Proceedings and Compel Arbitration is due to be granted over the objections of Plaintiff.  It is hereby ORDERED as follows:

(1) The Motion to Stay and Compel Arbitration (Doc. # 3) is GRANTED.

(2) The parties to this action are hereby ORDERED to submit all controversies, claims, or disputes between them to binding arbitration in accordance with the terms of the Arbitration Agreement dated August 4, 2000.

(3) This action is STAYED pending the completion of the arbitration or the resolution of this dispute through negotiated settlement.

(4) The parties are hereby ORDERED to file  jointly prepared reports on the status of this case.  The first such report shall be filed on April 4, 2006, and the parties shall thereafter file a jointly prepared report on the first Tuesday of every month until such time as the parties jointly stipulate that this action can be dismissed or that further action of this Court is required. The jointly prepared report shall indicate the status of the arbitration proceedings and the expected date those proceedings will be concluded.

DONE this 2nd day of March 2006.


_____/s/   W.  Keith Watkins_____
UNITED STATES DISTRICT JUDGE